UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN D. BRYANT,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**APOTEX, INC., et al.,**<br><br>　　　　**Defendants.** | **1:12-cv-1377-LJO-JLT**<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (Doc. 78)** |

## I. INTRODUCTION

Plaintiff Kevin D. Bryant ("Plaintiff"), who is currently housed in the California Men's Colony in San Luis Obispo, California, and is proceeding *pro se*, brings this product liability suit against Defendants[1], various manufacturers and distributors of generic gabapentin and tramadol, in which he claims he suffered various injuries due to ingesting generic gabapentin and tramadol in crushed form while he was incarcerated at Kern Valley State Prison ("KVSP") in Kern County, California. *See* Doc. 1, Complaint ("Compl."), at ¶¶ 7-10. Plaintiff brings a claim for fraud and four product liability claims on

---

[1] Defendants are Apotex, Inc., American Health Packaging, Actavis Elizabeth LLC, Major Pharmaceuticals, Inc., Mylan Institutional, Inc., Mylan Pharmaceuticals, Inc., and Teva Pharmaceuticals USA (collectively, "Defendants").

theories of strict liability, negligence, breach of express warranty, breach of implied warranty. *See id.* at 20-25.

Defendants move for judgment on Plaintiff's pleadings under Fed. R. Civ. P. 12(c). Doc. 78. Defendants assert that Plaintiff's fraud claim is barred because this Court previously dismissed the claim with leave to amend, but Plaintiff failed to file an amended complaint pursuant to the Court's order. *See id.*; *see also* Doc. 54 at 9 ("Plaintiff may file an amended complaint by no later than February 19, 2013."). Defendants assert they are entitled to judgment on Plaintiff's product liability claims because they are premised on Plaintiff's assertion that he suffered injuries due to ingesting gabapentin and tramadol in crushed form, but another court already has found that Plaintiff did not suffer any injuries due to ingesting either gabapentin or tramadol in crushed form. *See id.* at 5.

The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). *See* Doc. 82. For the following reasons, the Court GRANTS Defendants' motion for judgment on the pleadings.

## II. FACTUAL AND PROCEDURAL HISTORY

**A.    Factual Background.**[2]

In November or December 2009, Plaintiff was instructed by medical staff at KVSP to take his pain medications, which included Gabapentin and Tramadol, in crushed form. The medications were crushed and floated in small cups of water as part of a prison policy to prevent inmates from hoarding, selling, and overdosing on medication. Within one month of the policy's implementation, however, Plaintiff experienced severe pain in his stomach, vomited black blood frequently, and observed blood in his stool. These symptoms persisted over the next six months.

On July 7, 2010, Plaintiff was admitted to Mercy Hospital for leg surgery. The next morning,

---

[2] The relevant facts are drawn from the Court's January 30, 2013 Order on Defendants' Motion for Judgment on the Pleadings, which, in turn, are drawn primarily from Plaintiff's complaint. *See* Doc. 54 at 1-2. The parties do not dispute the facts, nor have any subsequent material facts developed since that order.

2

Plaintiff vomited black blood. In response, Plaintiff underwent an emergency procedure wherein 1.6 liters of blood, food, and other gastric content were removed from his stomach. Plaintiff's physician diagnosed Plaintiff's condition as severe erosive esophagitis with slow hemorrhages in the esophagus. Plaintiff's physician also indicated that this condition was probably caused by taking Gabapentin and Tramadol in crushed form.

Ms. Markman, a nurse at KVSP, informed Plaintiff that the "crush and float" policy at KVSP was implemented after several meetings between prison officials and KVSP medical staff. According to Ms. Markman, prison officials and KVSP medical staff were aware that administering Gabapentin and Tramadol in crushed form was contrary to the manufacturers' instructions, acknowledged the risks posed to prisoners, and yet decided to implement the "crush and float" policy regardless. In fact, some prison officials even claimed that they had obtained express permission and approval from Defendants to administer Gabapentin and Tramadol to prisoners in crushed form.

**B.    Procedural History.**

On December 22, 2010, Plaintiff filed suit against the California Department of Corrections and Rehabilitation ("CDCR") and various individually named CDCR employees ("the CDCR case") in which he alleged, among other things, that KVSP staff "began giving [him his] pain medications Gabapentin and Tramadol crushed and floated in water." Doc. 79-1 ("CDCR Compl.") at 3; *see also Bryant v. Harrington*, 2014 WL 5392967, at *1 (Cal. Ct. App. Oct. 23, 2014).[3] Plaintiff alleged that the KVSP staff's doing so caused him to suffer various injuries. *See* CDCR Compl. at 3. Specifically, Plaintiff alleged that he suffered from internal bleeding and hemorrhaging in his esophagus due to ingesting gabapentin and tramadol in crushed form. Plaintiff alleged claims for (1) personal injury; (2) professional negligence; (3) failure to obtain informed consent; (4) fraud; (5) intentional infliction of emotional distress; and (6) failure to summon medical care for a prisoner. *Bryant*, 2014 WL 5392967, at

---

[3] As explained below, this case is the unpublished decision of the California Court of Appeal in Plaintiff's CDCR case.

*4.

The defendants successfully moved for summary judgment on all of Plaintiffs' claims. *See id.* at *4 ("The trial court stated that by granting the summary judgment motion on June 28, the case had ended."). The court found, among other things, that the defendants had presented evidence successfully establishing that the defendants' use of gabapentin and tramadol "in crushed form is an acceptable medical practice consistent with the standard of care and does not increase risk to the health of the patient, and is not a cause or contributing factor to internal bleeding or hemorrhaging to the esophagus or stomach." *Id.* at *3. Conversely, Plaintiff "presented no documents or other evidence from any physician or medical expert supporting his allegations that administration of medication in crushed form violated the medical standard of care or caused any of his ailments." *Id.*; *see also* 79-4 ("the CDCR MSJ Order"), at 1 ("The Court finds . . . that there is no triable issue of material fact on the issue[] of . . . causation of injury"). Accordingly, the court granted the defendants' motion for summary judgment on all of Plaintiff's claims.

Plaintiff appealed the court's grant of summary judgment to the defendants, among other things. *See Bryant*, 2014 WL 5392967, at *1. The California Court of Appeal affirmed the trial court entirely, *see id.*, and there are no pending appeals of that decision. The CDCR case therefore has concluded with finality.

Plaintiff filed this case on May 9, 2012, in the Superior Court of California for the County of Kern. Compl. at 1. Defendants removed the case to this Court on August 21, 2012 on diversity jurisdiction grounds. *See* Doc. 1. Plaintiff asserts claims for (1) fraud[4]; (2) strict liability; (3) negligence; (4) breach of express warranty; and (5) breach of express warranty.[5]

---

[4] The Court previously dismissed Plaintiff's fraud claim with leave to amend; however, Plaintiff has not file an amended complaint in spite of the Court's order to do so over two years ago. Accordingly, Plaintiff's fraud claim is DISMISSED WITHOUT LEAVE TO AMEND.

[5] The Court refers to claims two through five as Plaintiff's "products liability claims."

4

Defendants filed a motion for judgment on the pleadings or, in the alternative, for summary judgment on Plaintiff's products liability claims ("Defendants' motion") on the ground that the CDCR case precludes them because they require a finding that Plaintiff sustained an injury due to ingesting gabapentin or tramadol in crushed form, but the Court of Appeal sustained the trial court's decision in the CDCR MSJ Order that Plaintiff did not sustain any such injury. Doc. 78 at 4. In other words, Defendants assert that Plaintiff's products liability claims—all of which are premised on Plaintiff's assertion that he suffered injuries due to ingesting gabapentin and tramadol in crushed form—fail because Plaintiff (and this Court) is bound by the trial court's determination in the CDCR case that Plaintiff's ingesting his medication in crushed form did not cause him any injuries. *Id.*

Plaintiff filed a motion for a 45-day extension of time to file an opposition to Defendants' motion. Doc. 80. Plaintiff claimed that, because he has "been on suicide watch since 2/23/15," he currently does not have "any of [his] property" and "do[es] not know all [his] case [numbers] in this court." *Id.* at 1. The Court confirmed that Plaintiff in fact was temporarily placed in a "crisis unit," which "would not have interfered with his ability to access his legal materials." Doc. 81 at 2. Accordingly, the Court denied Plaintiff's request for a 45-day extension but afforded him a 10-day extension—until March 21, 2015—to file an opposition to Defendants' motion. To date, Plaintiff has not filed an opposition. On March 27, 2015, Defendants filed a reply in which they noted that Plaintiff had not filed an opposition to their motion for judgment on the pleadings. Doc. 83 at 2. Defendants' motion therefore is ripe for adjudication.

### III. STANDARD OF DECISION

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to

5

judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Assocs. v. Barclays Bank of California,* 915 F.2d 1355, 1356 (9th Cir. 1990), *cert. denied*, 500 U.S. 917 (1991). A Fed. R. Civ. P. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "[A]ll allegations of fact of the opposing party are accepted as true." *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967). Thus, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Although Rule 12(c) does not mention leave to amend, courts have discretion to grant a Rule 12(c) motion with leave to amend. *See Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

Like a Rule 12(b)(6) motion to dismiss, a Rule 12(c) motion challenges the legal sufficiency of an opposing party's pleadings. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and quotations omitted). "While a complaint . . . does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do." *Id.* at 1964.

### IV. ANALYSIS

**A.     Collateral Estoppel Standard.**

The judgment of the California Court of Appeal in the CDCR case is entitled to "full faith and

credit" in this Court, *see* 28 U.S.C. § 1728, which requires this Court to give it the same preclusive effect it would have in another California state court. Defendants maintain that, under the doctrine of collateral estoppel, the Court of Appeal's judgment precludes Plaintiff from asserting his claims against Defendants in this case. "In determining the preclusive effect of a state-court judgment, this court must 'refer to the preclusion law of the State in which judgment was rendered.'" *Diruzza v. Cnty. of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

Under California law, collateral estoppel, otherwise known as issue preclusion, provides "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *People v. Santamaria*, 8 Cal.4th 903, 930 (1994). As the California Supreme Court has explained, five factors must be satisfied for collateral estoppel to apply:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990) (citations omitted). Further,

> the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitute sound judicial policy.

*Id.* at 343.

**B.     Collateral Estoppel Bars Plaintiff's Products Liability Claims.**

Defendants are correct that Plaintiff's products liability claims require a showing that he suffered injury as a result of ingesting his medications in crushed form.[6] *See* Doc. 78 at 14-15. Accordingly,

---

[6] *See O'Neal v. Crane Co.*, 53 Cal.4th 335, 348 (2012) ("Strict liability encompasses all injuries caused by a defective product"); *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 479 (2001) ("Thus, under either a negligence or a strict liability theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury."); *Williams v. Beechnut*

Defendants maintain that Plaintiff's products liability claims fail because each requires a showing that Plaintiff's ingesting gabapentin or tramadol in crushed form caused him injury, but that the CDCR case resolved with finality that Plaintiff did not and cannot prove that he suffered any such injury.

Each of the elements of collateral estoppel is satisfied here. Accordingly, CDCR case has preclusive effect here.

First, the issue of whether Plaintiff's ingesting his medication in crushed form caused him to suffer internal bleeding and esophageal hemorrhaging was decided in the CDCR case. The trial court found that "there is no triable issue of fact on the issue[] of . . . causation of injury" and the Court of Appeal sustained that finding. *Bryant*, 2014 WL 5392967, at *8.

Second, the issue of whether Plaintiff's ingesting his medication in crushed form caused him injury was actually litigated in the CDCR case. As the Court of Appeal noted, the defendants in the CDCR case presented expert testimony that administering gabapentin and tramadol in crushed form "was an acceptable medical practice consistent with the standard of care, does not present an increased risk to the patient's health, and is not a cause or contributing factor to internal bleeding or hemorrhaging to the esophagus or stomach." *Id.* at *7. Plaintiff, however, provided no evidence to counter the defendants' evidence. *Id.* at *8 (noting that Plaintiff "did not present expert testimony to support his claim that respondents acted below the standard of care or that administering his medications in crushed form caused his symptoms"). Because the defendants in the CDCR case established that Plaintiff's ingesting his medication in crushed form did not cause him any injury and Plaintiff failed to provide any evidence to the contrary, the issue was actually litigated in the CDCR case. *See People v. Sims*, 32 Cal.3d 468, 484 (1982) (an issue is "'actually litigated' when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined"); *see also Border Business Park, Inc.*

---

*Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) ("In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury."); *Cardinal Health 301, Inc. v. Tyco Elec. Corp.*, 169 Cal. App. 4th 116, 145 (2008) ("To recover on a breach of warranty cause of action, the plaintiff must show the breach caused the plaintiff to " 'suffer injury, damage, loss or harm [.]'") (citation omitted).

8

*v. City of San Diego*, 142 Cal.App.4th 1538, 1566 (2006) ("collateral estoppel [applies to] . . . issues which were raised, even though some factual matters or legal arguments which could have been presented were not").

Third, the issue of whether Plaintiff's ingesting his medications in crushed form caused him injury necessarily was decided in the CDCR case. In the CDCR case, Plaintiff's claims were premised on his allegation that the defendants' administering his medications to him in crushed form negligently caused him injury. The trial court found, however, that "Defendants met their burden of evidence that there is no trial issue of fact on the issue[] of . . . causation of injury," and the Court of Appeal affirmed that finding. *See Bryant*, 2014 WL 5392967, at *8 (affirming trial court's finding that Plaintiff "did not present expert testimony to support his claim that respondents acted below the standard of care or that administering his medications in crushed form caused his symptoms").

Fourth, the Court of Appeal affirmed the trial court's judgment in its entirety and Plaintiff did not appeal the Court of Appeal's decision. The CDCR case therefore has resolved with finality.

Fifth, Plaintiff brought the CDCR case and, as such, collateral estoppel is properly sought against him here. *See Vandenberg v. Superior Court*, 21 Cal.4th 815, 828-29 (1999) ("Only the party *against whom* [collateral estoppel] is invoked must be bound by the prior proceeding.") (emphasis in original).

In summary, Defendants have satisfied that the five elements necessary for the CDCR case's findings to have preclusive effect here under the doctrine of collateral estoppel. Further, Defendants assert—and the Court finds—that applying collateral estoppel will preserve judicial resources and promote overall judicial economy. Doc. 78 at 13. Accordingly, the Court will apply collateral estoppel here.

In the CDCR case, the Court of Appeal affirmed the trial court's finding that Plaintiff's ingesting gabapentin and tramadol in crushed form did not cause him any injuries. That finding is entitled to preclusive effect here. As discussed above, to succeed on any of his remaining products liability claims, Plaintiff must establish that his alleged injuries of internal bleeding and esophageal hemorrhaging were

caused by his ingesting gabapentin or tramadol in crushed form. Plaintiff therefore cannot succeed on his products liability claims pursuant to the CDCR case's findings. Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court GRANTS Defendants' motion for judgment on the pleadings. Doc. 78. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   **April 1, 2015**            /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE